No. 25-2595

# In the United States Court of Appeals For the Seventh Circuit

**Josiah Clark,**

*Plaintiff-Appellant,*

*v.*

**COOK COUNTY SHERIFF'S OFFICE, a Local Government Entity, Thomas Dart, Sheriff of Cook County in his Official Capacity, Kardell Perry, a Correctional Officer in his Individual Capacity, and Cook County, Illinois, a Local Government Entity,**

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, No. 19-cv-7131,
the Honorable Jorge L. Alonso

---

## REPLY BRIEF OF PLAINTIFF-APPELLANT JOSIAH CLARK

---

Andrew M. Hale
Shawn W. Barnett
HALE LAW, LLC
53 West Jackson, Suite 337
Chicago, IL 60604
Tel: (312) 870-6905

## ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

TABLE OF CONTENTS....................................................................i

POINTS AND AUTHORITIES..........................................................ii

ARGUMENT......................................................................................1

I. The Evidence Warrants Trial on Clark's *Monell* Claim.........1

A. Clark Suffered A Constitutional Injury.........................2

B. A Jury Should Decide Whether Defendants' Policy Of Inaction Caused Clark's Injuries and Acted With Deliberate Indifference..................................................8

1. A Reasonable Jury Could Find That Defendant's Policy of Inaction Was The Moving Force Behind Clark's Injury.......................................................9

2. A Reasonable Jury Could Find Deliberate Indifference..........................................................11

II. Conclusion.........................................................................15

CONCLUSION................................................................................17

CERTIFICATE OF COMPLIANCE.......................................................18

CERTIFICATE OF SERVICE..............................................................19

## POINTS AND AUTHORITIES

### Cases

*Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997) ............................ 10

*Brown v. Budz*, 398 F.3d 904 (7th Cir. 2005) ......................................... 15

*Daniel v. Cook Cnty.*, 833 F.3d 728 (7th Cir. 2016) ................................. 4

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*

489 U.S. 189 (1989) ........................................................................ 5, 6

*Farmer v. Brennan*, 511 U.S. 825 (1994) .......................................... 12, 15

*First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago,*

988 F.3d 978 (7th Cir. 2021) ..................................................... 5, 6, 7

*Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372 (7th Cir. 2017) ....... 12, 13, 14

*Goka v. Bobbitt*, 862 F.2d 646 (7th Cir. 1988) ...................................... 7, 9

*Iwanski v. Oklahoma Dep't of Corr.*, 201 F.3d 448 (10th Cir. 1999) ........ 7

*J.K.J. v. Polk County*, 960 F.3d 367 (7th Cir. 2020) (en banc) ............... 10

*Jaimes v. Cook County,*

2022 U.S. App. LEXIS 19743 (7th Cir. July 18, 2022) ....................... 14

*Kemp v. Fulton County*, 27 F.4th 491 (7th Cir. 2022) .............................. 8

*Ruiz-Cortez v. City of Chicago*, 931 F.3d 592 (7th Cir. 2019) ................ 10

*Smith v. Sangamon Cnty. Sheriff's Dep't,*

715 F.3d 188 (7th Cir. 2013) ............................................................ 12

*Swofford v. Mandrell*, 969 F.2d 547 (7th Cir. 1992) ................................. 7

*Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293 (7th Cir. 2010) ........ 4

*Thomas v. Dart*, 39 F.4th 835 (7th Cir. 2022) ........................................... 8

*Tolan v. Cotton*, 572 U.S. 650 (2014) ....................................................... 15

*Wilson v. Cook County*, 742 F.3d 775 (7th Cir. 2014) ............................. 10

*Woodward v. Corr. Med. Servs. of Ill., Inc.*,

368 F.3d 917 (7th Cir. 2004) ............................................................... 9

## ARGUMENT

### I. The Evidence Warrants Trial on Clark's *Monell* Claim.

The district court below found that Clark's constitutional rights were violated when he was severely beaten by a fellow detainee wielding a wheelchair arm as a weapon while in the custody of the Cook County Jail. Defendants do not challenge that finding on appeal. The sole question before this Court is whether a reasonable jury could find that the Sheriff's Office's decision to continue furnishing easily disassembled wheelchairs to a population known to weaponize them—despite sixteen documented incidents over four years and without any further inquiry after a single product test in 2015—constitutes the policy, deliberate indifference, and causation that *Monell* requires. The answer is yes.

Defendants attempt to avoid trial on four grounds: (1) waiver; (2) that no constitutional violation occurred because Barksdale's attack was "private violence"; (3) that Clark's causation theory is a "tautology"; and (4) that the Sheriff's Office's one-time product inquiry in 2015 immunizes it from liability. Each argument fails. The constitutional violation was found by the district court and is unchallenged. The causation theory is not tautological but direct: the policy supplied the specific

instrumentality used to inflict the injury. And a single product test followed by years of inaction in the face of continuing incidents is not deliberate consideration, but rather deliberate indifference. This Court should reverse.

### A. Clark Suffered A Constitutional Injury.

Contrary to Defendants' position, Clark suffered a clear violation of his constitutional rights and thus easily satisfies *Monell's* threshold requirement to show a deprivation of a federal right. Specifically, while Clark was in pretrial confinement at the Cook County Jail, he was brutally assaulted by another detainee wielding a weapon hastily fashioned from a Jail-issued wheelchair. This is precisely the type of serious harm the Fourteenth Amendment requires the State to guard against when it takes an individual into custody. Defendants do not meaningfully dispute the State's duty to protect detainees from physical violence in the custodial setting. Instead, they attempt to avoid it, first by claiming waiver, second by mischaracterizing the right at issue, and third by invoking inapposite precedent. Yet Defendants' argument fails from the start because it ignores the district court's express finding that

Clark suffered a constitutional violation, a finding Defendants offer no basis to disturb.

At the outset, Defendants' waiver argument is baseless. Defendants contend that because "Clark does not dispute on appeal the district court's conclusion that he failed to show that defendants failed to protect him from Barksdale," he has waived any claim that his constitutional rights were violated. (Def. Br. 8). Not so. In the district court and on appeal, Clark has consistently maintained that he, as a pretrial detainee, had a Fourteenth Amendment right to be protected from physical violence inflicted by others within the institution, and that this right was violated when he was subjected to a known and preventable risk of serious harm.

The district court agreed. Addressing "the threshold [*Monell*] issue," the district court recognized that "incarcerated people have a clearly established right to be free from physical harm inflicted by others in the institution," and found that this right was violated when "Clark sustained serious, life-threatening injuries while being detained at the Cook County Jail." (Dkt. 123 at 6). Defendants identify no forfeiture, no abandoned argument, and no basis to disturb the district court's

conclusion. Instead, Defendants appear to suggest that because Clark has not appealed the district court's finding that no *single officer* can be found individually liable for failing to protect Clark, he has waived his ability to establish municipal liability for his constitutional injury. But that is not the law.

The Seventh Circuit has repeatedly rejected any *per se* bar on standalone *Monell* claims. Standalone municipal liability attaches where a constitutional injury flows from an unconstitutional policy, practice, or custom manifesting deliberate indifference, rather than the misconduct of an individual government official. Indeed, it is settled that "a municipality can be held liable under *Monell*, even when its officers are not[.]" *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010); see also *Daniel v. Cook Cnty.*, 833 F.3d 728, 734 (7th Cir. 2016) (same). Clark's decision not to appeal the district court's individual-liability ruling does not waive his *Monell* claim, nor does it undermine the constitutional injury the district court itself recognized at the threshold *Monell* step—a finding Defendants do not challenge on appeal. (Dkt. 123 at 6).

Defendants' fallback argument, grounded in *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978 (7th Cir. 2021), is equally unavailing. Defendants contend that *First Midwest* "allows for easy disposal of Clark's claim" because Barksdale "was not a state actor, but a private person detained alongside Clark," and therefore, under *First Midwest*, the State had "no duty" to protect Clark from Barksdale's purportedly "paradigmatic 'act of private violence.' " (Def. Br. at 10). That argument misreads *First Midwest* and ignores the core principle that decision reaffirmed.

In *First Midwest*, this Court considered whether the City of Chicago could be held liable under a *Monell* theory where an off-duty police officer shot the plaintiff, his friend, following a night of drinking. 988 F.3d at 982. Relying on *DeShaney v. Winnebago Cnty. Dep't. of Soc. Serv.*, 489 U.S. 189 (1989), this Court held that the plaintiff had failed at "step one" of *Monell's* test by failing to prove he was deprived of a federal right. *First Midwest*, 988 F.3d at 987. This Court explained that because the off-duty officer's conduct was "that of a private citizen in the course of purely private social interaction," and the Due Process Clause does not generally

protect individuals from private violence, *Monell* did not offer a path to relief. *Id*.

But the general rule relied upon in *First Midwest* contains a critical exception that is dispositive here: "the state has an affirmative duty to provide for the safety of a person it has taken into custody involuntarily." *Id.* Unlike the plaintiff in *First Midwest*, Clark was not injured during a private social encounter with a private actor; he was a pretrial detainee confined in a state-run jail. As the *First Midwest* court recognized, once the State "so restrains an individual's liberty that it renders him unable to care for himself," by taking him into custody, it assumes a constitutional obligation to provide for his reasonable safety. *DeShaney*, 489 U.S. at 200. Because Clark was in State custody when he was attacked, this case falls squarely within *DeShaney*'s custodial exception, and *First Midwest*'s "private actor" analysis is irrelevant to the threshold constitutional inquiry.

Indeed, in the custodial setting, this Court and its sister circuits have routinely recognized that the Eighth Amendment may be violated "when prison officials permit inmate access to objects which could be used as weapons, especially when this conduct is accompanied by a lack of

adequate supervision over the inmates." *Iwanski v. Oklahoma Dep't of Corr.*, 201 F.3d 448 (10th Cir. 1999); see also *Goka v. Bobbitt*, 862 F.2d 646, 651-52 (7th Cir. 1988) (reversing summary judgment where inmate submitted evidence that prison officials knew of systematic lapse in enforcing tool control policy but failed to take action, thereby creating a climate where violence was likely). It follows that the Fourteenth Amendment is violated when detainees are permitted the same access in a pretrial detention setting. See *Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir. 1992) (pretrial detainees' rights under Fourteenth Amendment are at least as expansive as prisoners' rights under the Eighth Amendment). Certainly, nothing in *First Midwest* nor any other case cited by Defendants supports their apparent argument that the State may evade its constitutional obligations by relabeling foreseeable, institutionally enabled detainee-on-detainee violence as "private."

Moreover, Defendants' argument rests on a mischaracterization of the right at issue: Clark has never claimed an "absolute right against harm" (Def. Br. 13), or a "broad constitutional rule against all harm" in jail. *Id.* He claims only what the Seventh Circuit has repeatedly recognized: a pretrial detainee's right "to be free from physical harm

inflicted by others in the institution." *Thomas v. Dart*, 39 F.4th 835 (7th Cir. 2022); *Kemp v. Fulton County*, 27 F.4th 491 (7th Cir. 2022). The district court expressly found that right was violated here, and Defendants offer no basis to disturb that conclusion.

### B. A Jury Should Decide Whether Defendants' Policy of Inaction Caused Clark's Injuries and Acted With Deliberate Indifference.

Defendants' remaining arguments fail because they ask this Court to do what it cannot at summary judgment: resolve disputed factual questions about causation and deliberate indifference in their favor. Viewing the record in the light most favorable to Clark, a reasonable jury could find that Defendants, despite years of notice that detainees were weaponizing wheelchair components, chose not to act and that this decision both caused Clark's injuries and reflected deliberate indifference to a known and recurring risk of serious harm. Because the record supports those findings, Clark's *Monell* claim must proceed to trial.

#### 1. A Reasonable Jury Could Find That Defendants' Policy of Inaction Was the Moving Force Behind Clark's Injury.

Defendants label Clark's causation theory a "tautology." (Def. Br. 16). It is not. The tautology charge applies to arguments like: "if there

had been no guns, he would not have been shot." Clark's argument is materially different. The Sheriff's Office, with actual notice that detainees were disassembling wheelchairs and using their components as weapons, made a deliberate policy decision to continue distributing the same easily disassembled wheelchairs in the Jail anyway. That decision did not merely create a background risk of unspecified violence. It placed the specific instrumentality of Clark's injury—a detachable wheelchair arm—into the hands of the population known to weaponize it. The policy did not just fail to prevent Barksdale's attack; it furnished what he used to carry it out. That is direct causation, not merely but-for causation.

The Seventh Circuit cases confirm this is the right frame. In *Goka v. Bobbitt*, 862 F.2d 646, 651–52 (7th Cir. 1988), this Court reversed summary judgment where prison officials knew of a systematic lapse in tool control policy but failed to act, thereby creating conditions in which violence was foreseeable. The causal link ran from the policy failure to the specific dangerous implement left accessible—the same logic that applies here. In *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 929 (7th Cir. 2004), a reasonable jury could find a "direct causal link"

between a custom of ignoring written procedures and the plaintiff's suicide, even though a person (the plaintiff himself) was the proximate actor. An intervening human act does not break the causal chain when that act is the very harm the policy failed to prevent. And where, as here, a municipality's policy supplies the specific weapon used in the foreseeable attack, the policy is not a distant background condition; it is the "moving force" that "set in motion" the constitutional violation. *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). The sixteen documented incidents between 2015 and 2019, none of which prompted a policy change, confirm that this risk was not speculative but a known and recurring reality. That is the "high degree of predictability" and "widespread pattern" that support a causation inference. *Brown*, 520 U.S. at 409–10; *J.K.J. v. Polk County*, 960 F.3d 367, 377–78 (7th Cir. 2020).

Defendants' attenuated-causation cases do not help them. In *Wilson v. Cook County*, 742 F.3d 775, 784 (7th Cir. 2014), the deficient hiring policy bore only "a stretch" of a relationship to an officer who invented a phony position of power to abuse someone he had no official contact with. In *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 599 (7th

Cir. 2019), the practice of paying informants was several degrees removed from one officer's corrupt suppression of evidence. In both cases, the policy did not supply the means of injury—it was merely present somewhere in the background. Here, the policy permitted a dangerous weapon to remain in the facility. That is direct causation. A reasonable jury could find that this policy was the moving force behind Clark's injuries, and summary judgment should not have been granted.

**2. A Reasonable Jury Could Find Deliberate Indifference.**

Defendants next argue that Clark's *Monell* claim fails as a matter of law because no reasonable jury could find Defendants acted with deliberate indifference. According to Defendants, "the question of wheelchair safety was acknowledged and addressed by jail officials, who ordered two of the purported 'tamper-proof' wheelchairs, tested them, and found them to be inadequate," because the tamper-proof wheelchairs they tested were "flimsy," "broke almost immediately," and created "sharp, jagged" edges that could be used as weapons. (Def. Br. 18, 20). According to Defendants, Jail officials then "carefully consider[ed] the risks of tamperproof wheelchairs, particularly the risk of fatal stabbings they introduced to the facility," before reaching a "well-thought-out

conclusion that balanced the risks and benefits" of available options. (Def. Br. 18, 20).

However, even crediting Defendants' account does not resolve the deliberate indifference question in their favor as a matter of law. At most, these facts show that Defendants identified competing risks. It does not establish that the ultimate response of continuing to permit the use of easily disassembled wheelchairs, despite repeated incidents of weaponization, was reasonable. See *Glisson*, 849 F.3d at 381–82. While the deliberate indifference standard is demanding, it does not permit a municipality to avoid liability simply by pointing to some consideration of risk while continuing a course of action known to produce constitutional harm. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994) ("[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.").

Defendants also misapply *Smith v. Sangamon Cnty. Sheriff's Dep't*, 715 F.3d 188 (7th Cir. 2013). The *Smith* court found a failure of proof on the deliberate indifference element where the plaintiff "presented no evidence that [the challenged] feature in the classification policy creates a serious risk of physical harm to inmates, much less that the Sheriff's

Department knew of it and did nothing." 715 F.3d at 192. Here, by contrast, Clark has set forth evidence of a known history of repeated incidents in which Jail-issued wheelchair components were used in detainee-on-detainee assaults. A reasonable jury could conclude that Defendants' response, testing two models once and then doing nothing further as incidents continued, was not a reasonable response to a known danger. The ADA compliance officer testified that she never reconsidered the 2015 decision "because she was confident in her original conclusion." (Dkt. 114-6 at 36). That is not careful ongoing risk management but rather a decision to stop looking as additional incidents confirmed the danger. Under *Glisson*, that is precisely the kind of known, continuing deficiency that policymakers failed to correct, the hallmark of deliberate indifference. 849 F.3d at 381–82.

The danger was not only documented internally, it was also publicly acknowledged by the Jail's own leadership. In March 2017, the Jail's Assistant Executive Director, Daniel Moreci, told the Chicago Sun-Times that guards "are on constant lookout" for weapons fashioned from detachable wheelchair parts. (R. 119-9 at 5). That acknowledgment came two years after Rivero-Canchola's product inquiry and in the middle of

the four-year window during which sixteen wheelchair-weapon incidents were accumulating. If the 2015 inquiry had resolved the problem, there would have been nothing for the Jail's own leadership to publicly acknowledge in 2017. A reasonable jury could find that continued inaction in the face of that acknowledged, ongoing danger is not careful risk management, but instead evidences the failure to correct a known deficiency that *Glisson* treats as deliberate indifference.

Defendants' own authority confirms this conclusion. They rely on *Jaimes v. Cook County* for the proposition that deliberate indifference is precluded where defendants "took steps to identify and mitigate [a] risk of violence." 2022 U.S. App. LEXIS 19743, at *11 (7th Cir. July 18, 2022). But *Jaimes* cuts the other way here: testing two chairs from a single vendor in 2015, and then conducting no further inquiry—even as wheelchair-weapon incidents accumulated over four more years—is not "mitigating" a risk. It is identifying a risk, making a cursory initial inquiry, and then abandoning it. That is precisely the conduct *Jaimes* does not protect.

Nor does Defendants' suggestion that liability here would impose "policy perfection" or create a "heads-I-win, tails-you-lose" dilemma carry

the day. (Def. Br. 20). Clark does not argue that Defendants were required to eliminate all risk or adopt any particular product. He argues that they were required to respond reasonably to a known and recurring danger. The Constitution does not demand perfection, but it does prohibit knowingly maintaining conditions that expose detainees to substantial risks of serious harm without adequate response. See *Farmer*, 511 U.S. at 833; *Brown v. Budz*, 398 F.3d 904, 915 (7th Cir. 2005).

At bottom, Defendants ask this Court to credit their narrative, that they acted reasonably because they "researched," "tested," and made a "well-thought-out" decision, and to reject Clark's competing evidence. That is not the role of summary judgment. See *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). Viewing the record in the light most favorable to Clark, a reasonable jury could find deliberate indifference.

## II. Conclusion

The district court found that Clark's constitutional rights were violated when he was attacked with a wheelchair arm wielded as a weapon by a fellow detainee. Defendants do not contest that finding on appeal. The record shows that policymakers were aware for years that detainees were removing wheelchair components and using them as

weapons, conducted a single product inquiry in 2015, and took no further action as incidents continued to accumulate. A reasonable jury could find that this response was both the moving force behind Clark's injury and the product of deliberate indifference to a known and recurring risk of serious harm. This Court should reverse the district court's grant of summary judgment and remand for trial.

## CONCLUSION

For all the reasons set forth, this court should reverse the judgment of the district court and remand the claims against the Cook County Sheriff's Office and Thomas Dart in his official capacity as the Sheriff of Cook County for further proceedings.

Respectfully submitted,

By: /s/ Shawn W. Barnett
Counsel for Appellant
HALE LAW, LLC
53 West Jackson, Suite 337
Chicago, IL 60604
Tel: (312) 870-6905

CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the Plaintiff-Appellant's principal brief complies with Fed. R. App. P. 32(a)(7)(B), (f) because: the brief contains 3,587 words, including footnotes (as determined by the word count feature on Microsoft Word), and the type-face is Century Schoolbook, 12 points or larger in the body of the brief and 11 points or larger in footnotes, as required by Circuit Rule 32(b).

/s/ Shawn W. Barnett
Counsel for Appellant

HALE LAW, LLC
53 West Jackson, Suite 337
Chicago, IL 60604
Tel: (312) 870-6905

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Shawn W. Barnett
Counsel for Appellant

HALE LAW, LLC
53 West Jackson, Suite 337
Chicago, IL 60604
Tel: (312) 870-6905